Shauck, J.
The principal question is, whether the real estate acquired by the testator upon foreclosure of the Counts mortgage, after the publication of his will, passed to the three daughters of *238 the first marriage under the fifth item of the will, or descended to the four daughters as intestate property.
If the condition and character of the estate has not been changed after the publication of the will, the Counts notes and mortgage would have passed to the three daughters, not as a specific bequest, but under the third item of the will, which disposed of the residuum of the personal estate expressly including the testator’s money contracts. In that case there would have been a testamentary disposition of all the testator’s property; and it is contended that, notwithstanding the change in the character of the property, the same conclusion must now be reached in view of the provisions of section five thousand nine hundred and sixty-nine of the Revised Statutes. It is there enacted that property acquired by the testator after making his will, shall pass thereby as if held or possessed at the time of making the will, “ if such shall clearly and manifestly appear by the will to have been the intention of the testator.” Prior to this statute, as counsel agree, the power of testamentary disposition did not extend to real property acquired by the testator after the making of his will. The statute not only contemplates that ■one may make a will, and yet die intestate as to a portion of his property.; but as to property acquired after the making of the will, it seems to create the presumption of intestacy, for such property passes only when it shall clearly and manifestly appear from the will that such was the intention of the testator. But in the construction of the same provision in the statute of Massachusetts, it is said that these intensives can receive no precise effect in the construction of wills, and that “they are too vague, and indeterminate to form a rule of much practical use.” Brimmer v. Sohier, 1 Cush. 118; Winchester v. Forster, 3 Cush. 366. If the statute creates the presumption of intestacy as to subsequently acquired property, how slight that presumption is appears from these cases, and from Pruden v. Pruden, 14 Ohio St. 25, and Cushing et al. v. Aylwin, 12 Met. 169. In all these cases, subsequently acquired lands were held to pass under wills which made apparent the testator’s intention to dispose of all his property, although the subsequent purchase of lands did not appear to have been in his mind, and *239 no apt words were used to extend the testamentary provisions to such lands. They belong to a class of cases which strikingly illustrate the extent to which all other considerations must yield to the intention of the testator as that may be gathered from the entire will. The considerations upon which they proceed are, that it seldom happens that one who takes the trouble to make a will, intends to die intestate as to any of the property that he may own at the time of his death, and when it appears from the whole scheme and tenor of the will that the testator intended to make a full disposition of his property, real and personal, a change of that intention cannot be inferred from the fact that he subsequently converts a portion of the personal property into lands.
These authorities would afford an easy and certain solution of the case before us in favor of the three residuary devisees, but for the definite description of the forty-five acres in the fifth item of the will. This is a correct description of the lands that would have passed under the residuary clause if the character of the testator’s property had remained unchanged until his death. Whether it requires us to restrict the disposition to the forty-five acres described, is a question from which all doubt has not been removed by the most careful consideration. Certainly, if this item were to be considered alone, without regard to the scheme and purpose of the testator, as indicated by. his whole will, it would be effective to pass only the forty-five acres described. But the precise question is, whether the description should so limit the devise, in view of the testator’s manifest intention to dispose of his entire estate.
In Martin v. Smith, 124 Mass. 111, it is decided that where a testator was seized in fee at the time of publishing his will, as well as at his death, of two parcels of land, one lying on the north and the other on the south side of a certain street, his devise of “ all the real estate I may die possessed of, which property is situate on the north side of said street,” operated to pass both parcels. This was upon the principle that a general description is not limited by a partiular misdescription. But the particular description in the fifth item of the will before us is a correct description of the residuum of the lands owned by the testator at the publication of his will.
*240 In Champion et al. ex parte, Busbee’s Eq. (N C.) 246, Richard Champion published his will in 1847, containing the provision, “I give and devise to my beloved wife, Helen Maria Champion, all my real estate, consisting of, etc.,” inserting here a correct description of all the lands which he then owned. Subsequently he purchased two tracts of land; and in a controversy between the widow and heirs-at-law of the testator, it was held that the subsequently acquired lands passed to the widow under the general terms of .the devise to her, although it was coupled with a particular description of the lands owned by the testator when he published his will. True, this case was decided under a statute which provided that wills should be construed as if executed, not at the time of their execution, but the death of the testator, unless the contrary intention should appear by the will; but it did not, for that reason, any the less depend upon the consideration that there was merely an omission in the enumeration of a class ejusdem generis, and not the omission of a class. Upon this distinction the court forcibly observes: “Oné may well be supposed to omit by mistake a particular individual of a class, and therefore, the omission should not hurt, if he uses terms broad enough to include the whole class.”
As to the cases relied on to support the conclusion that this is intestate property: Church v. The Manufacturing Co., 14 R. I. 539, is not in point, because the statute there required that the intention to devise lands subsequently acquired should appear “ by the express terms of the will.” In Smith v. Hutchinson, 61 Mo. 83, it was held that subsequently acquired lands did not pass under a gift of “all my other property, consisting of horses, cattle, hogs, money and effects whatsoever,” because the gift was of a different class of property Unless the case may be thus distinguished, it is opposed to Pruden v. Pruden. This conclusion is opposed rather than supported by Allen et al. v. White et al., 97 Mass. 504. The controversy there concerned lands which were the subject of a lapsed devise. The precise question was whether they passed under the fourth clause.of the will which devised: “ All the rest and remainder of my real estate, the same being,” certain estates which the testator *241 enumerated and described, or under the twelfth clause which was as follows: “ And the rest, residue and remainder of my property and estate I give an bequeath, etc.” While the court held that the lands did not pass under the fourth clause, it was not because of the enumeration contained in that clause, but because it was qualified and controlled by the twelfth. The court were obviously of the opinion that the general terms of a devise are not limited by a particular enumeration, for they say: “Either the fourth or twelfth clause would have been sufficient to include the land in question, if it had stood alone.”
The law as there defined is that, while such words of description may be regarded in determining under which item of a will lands shall pass, they must not be allowed to defeat the manifest intention of the testator to dispose of all his property.
The presumption against intestacy in such case is strongly stated in Redfield on Wills, 381, quoting the language of Lord Elden: “ The courts have held, whether on satisfactory ground or not is another question, that where a person gives all his property, it shows that he did not mean to die intestate, and not meaning to die intestate as to what he had at the time of making his will, they have inferred that he did not mean to die intestate as to what he should have at the time of his death. This rule has sometimes operated with great hardship, and directly contrary to the intention of the party, but notwithstanding that, it has been allowed to prevail.” A court might well hesitate in a case of this character to apply any rule of construction that would operate “ contrary to the intention of the party.” We can not say that the application of the rule to the case before us would work a hardship, for it would obviously result in a substantially equal division of the estate. Nor do we perceive that it would operate contrary to the intention of the testator. The words describing the residuum of the estate which he owned at the time of making the will, were then unimportant, if -not entirely meaningless. At most, they only served to make more apparent what clearly appeared in the four eases first cited, viz., that at the publication of the will the *242 testator did not contemplate the further acquisitions of lands. They do not weaken the conclusion, to be drawn from the entire will, that the testator intended to make a complete-disposition of all his property. To say that they now require the conclusion that this is intestate property, is to say that a change of that intention is to be inferred from the subsequent-purchase of lands. That inference would be contrary to reason and the authorities. It would be especially unreasonable in this case, for by the terms of the will the residuum of the personalty and the residuum of the land were given to-the same persons; and the subsequent conversion of the-Counts notes and mortgage into lands was from necessity, and not from any design to change the disposition of his estate.
We conclude that the real estate acquired by the testator after the making of his will passed thereby to the three residuary devisees Catharine, Margaret and Celia.
The personal estate in the hands of the administrator being insufficient to pay the debts, an order may be taken for the sale of the forty-five acres, unless the three devisees who-are alone concerned, prefer that the deficiency be made up-from the sale of a portion of the Counts land.