JOHN H. CASEY, administrator with the will annexed, *vs.* JOHN SYLVESTER GENTER & others.

Suffolk.   April 7, 8, 1931. — June 24, 1931.

Present: RUGG, C.J., CARROLL, SANDERSON, & FIELD, JJ.

*Devise and Legacy*, Lapsed legacy, Residue, Annuity charge. *Probate Court*, Petition for instructions. *Words*, "Government bonds."

Provisions of the will of a widow, after nominating executors, were: "I . . . charge them with the full disposition of my property without any interference from my heirs. One third of all I die possessed to be divided equally between my daughter . . . [and sole heir at law] and . . . [one who was a witness to the will], the rest I leave without restrictions to my affianced husband . . . his portion to be subject to a yearly tax of one thousand dollars a year to be given to my Father . . and my Mother . . . on Jan. 1st of each year

or to either one of them who survives the other. At their death the said sum is to revert to my daughter . . . to be paid her on the same date and in the same manner. A sufficient sum from the inheritance of . . . [the 'affianced husband'] — shall be set aside and invested in Government Bonds to bring in the one thousand dollars yearly. The estate to be settled in five years. . . . [The 'affianced husband'] to be charged with the comfortable maintenance of my father and mother until the estate is settled. . . . I do not wish any part of my property to be otherwise disposed of." Seven years after the death of the testatrix, an administrator with the will annexed of her estate received from the estate of her husband, who had died before her will was made, $52,219 with which to carry out the provisions of the will. There then were living the father and the daughter of the testatrix, the legatee who had been a witness to the will and the man described in the will as the "affianced husband." It appeared that the father of the testatrix had a monthly pension but since her death had been provided by her daughter with every comfort and many luxuries at an added expense to herself or her husband of a substantial sum. Upon a petition for instructions it was *held*, that

(1) The legacy to one who was a witness to the will was void under G. L. c. 191, § 2;

(2) Such legacy was not itself a part of the residue and therefore did not pass as intestate estate;

(3) The true residuary clause in the will was intended to begin with the word "rest," following the legacies to the daughter and to the witness;

(4) The one sixth of the estate, which was what the testator had stated was to be given to the witness, became a part of such residue;

(5) The gift of the "rest" of the estate to the "affianced husband," notwithstanding the use of the words "without restrictions" in connection with the gift, was of an absolute estate but subject to a trust or charge;

(6) An order in a decree of the Probate Court that a sufficient sum be paid to a trustee under the will to be appointed by the Probate Court to produce $1,000 annually to be paid to the father of the testatrix as therein ordered was right;

(7) It was the intention of the testatrix that her father should be entitled to the amount ordered to be paid him in the decree, to begin at her death;

(8) The testatrix in specifying government bonds used words more commonly applied to bonds of the United States than to bonds of a municipality, county or State, and an order in the decree of the Probate Court that the sum be invested in bonds of the United States was affirmed;

(9) An order in the decree of the Probate Court, that the estate given to the "affianced husband" be chargeable with the sum of $1,000 annually from the date of the death of the testatrix until the estate should be settled and that there should be paid to a trustee the fund from the income of which the annuity should be paid to the father, was affirmed.

PETITION for instructions, filed in the Probate Court for the county of Suffolk on June 27, 1930, and described in the opinion, by the administrator with the will annexed of the estate of Lillia Frank Andersson, late of Boston.

It appeared from the pleadings that Andrew Andersson, husband of the testatrix, had died on February 28, 1912, and that her will was made on September 24, 1912. Other material facts appearing at the hearing of the petition by *Dolan*, J., are stated in the opinion. By order of the judge, a final decree was entered instructing the petitioner (1) "that the bequest in the will of said testatrix of one-sixth of all she died possessed, to Anna Florence Andersson, now Keen, is void; that the one-sixth share, of the estate of said testatrix, to which said Keen would have been entitled had she not been a witness to said will, passes as a part of the 'rest' of the estate of said testatrix in the manner set forth in said will as hereinafter construed"; (2) "that the words 'Government Bonds', as used in said will, mean bonds issued by the United States of America"; (3) "that a sufficient sum shall be paid over to a trustee under said will, to be appointed by . . . [the Probate Court] on appropriate petition, which sum invested in bonds of the United States will produce one thousand dollars annually, to be paid by said trustee, or his successor, on the first day of January, of each year, succeeding the payment to said trustee of said 'sufficient sum', to Fitz Hodgkins, the father of said testatrix, during his life"; (4) "that the 'rest' of the estate given under said will to John S. Genter, subject to further provisions, is chargeable with the sum of one thousand dollars annually from the date of the death of said testatrix and until her estate is settled and payment is made to the trustee as hereinbefore provided of said 'sufficient sum', as a comfortable maintenance for her father Fitz Hodgkins and is now payable by said administrator in the manner following, the testatrix having died on the third day of March, 1923, the amount shall be apportioned for the balance of that year on the basis of one thousand dollars annually. For each succeeding year, until the estate of said testatrix is settled and payment made to the trustee as hereinbefore provided,

said administrator shall pay said Fitz Hodgkins out of the 'rest' of said estate, the sum of one thousand dollars. Upon the setting up of the trust and the payment to the trustee, hereinbefore referred to, of a sum to be invested by him in United States Bonds sufficient to produce one thousand dollars income annually, said administrator shall also pay to said trustee, out of said 'rest' of the estate, a sum sufficient with the income from the trust fund to produce a sum of one thousand dollars in the first year of the trust as from January to January."

The respondents Anna Louise Heath, John Sylvester Genter and Fitz Hodgkins appealed.

*R. J. Lane,* for John Sylvester Genter.

*A. E. Yont,* for Anna Louise Heath.

*Joseph Wentworth,* for Fitz Hodgkins.

SANDERSON, J. This is an appeal from a decree of the Probate Court based upon a petition brought by the administrator with the will annexed of the estate of Lillia F. Andersson, who died March 3, 1923, for instructions as to the construction of her will. The material parts of the will of the testatrix are in the following terms: "After the payment of my just debts and expenses of my last sickness and funeral charges, I give, devise and bequeath as follows, Viz: — First: I constitute and appoint John S. Genter and John Burke (my book-keeper) as my executors without bonds and charge them with the full disposition of my property without any interference from my heirs. One third of all I die possessed to be divided equally between my daughter Annié Louise Andersson and Anna Florence Andersson, the rest I leave without restrictions to my affianced husband John Sylvester Genter, his portion to be subject to a yearly tax of one thousand dollars a year to be given to my Father, Fitz Hodgkins and my Mother Annie M. Hodgkins on Jan. 1st of each year or to either one of them who survives the other. At their death the said sum is to revert to my daughter Annie L. Andersson to be paid her on the same date and in the same manner. A sufficient sum from the inheritance of John S. Genter — shall be set aside and invested in Government Bonds to bring in the one thousand

dollars yearly. The estate to be settled in five years. Mr. Genter to be charged with the comfortable maintenance of my father and mother until the estate is settled. I make this will as I have no time to adjust things with a lawyer's assistance and am taking a trip which might result in accidents, and I do not wish any part of my property to be otherwise disposed of." The will was dated September 24, 1912, and one of the three witnesses to it was Anna Florence Andersson, now Keen, a legatee.

In March, 1930, the administrator with the will annexed of the testatrix received the share and interest in the estate of her husband which belonged to her estate, and now has on hand $52,219.05, subject to inheritance taxes, with which to carry out the provisions of her will. The amount thus received forms the larger .part of her estate and without it there was not sufficient property in her estate to pay legacies and expenses. The first question asked in the petition is, "Whether Anna Florence Keen, formerly Anna Florence Andersson, is entitled to receive one half of the one third of said Lillia's estate bequeathed her under said will, she being one of the three witnesses to the making, signing and execution of said will"; the second, "Whether in case said Anna Florence Keen is not entitled to receive said one half of said one third of said Lillia's estate, the same is to be distributed as part of the rest and residue of said estate"; the third, fourth, fifth and sixth requests relate to the manner in which the annuity for the father of the testatrix shall be dealt with, its disposition at his death, the interpretation of the words "Government Bonds," and whether the estate of the testatrix is chargeable with the comfortable support of her father from the time of her death if he has been comfortably maintained by himself or his granddaughter.

Since the death of the testatrix her father, Fitz Hodgkins, has lived with his granddaughter, Mrs. Heath, who was named in the will Annie Louise Andersson and is the sole heir at law of the testatrix. The mother of the testatrix died in 1923. Her father for most of the past seven years had a monthly pension from the United States, and his granddaughter has provided him with every comfort and

many luxuries at an added expense to herself or her husband of a substantial sum. He now has about $2,000.

The legacy to Anna Florence Andersson of one sixth of all the estate of which the testatrix died possessed was void because she was one of the three witnesses to the will, G. L. c. 191, § 2, and the part of the decree so deciding is affirmed. The disposition of this part of the estate depends upon the intention of the testatrix with reference to the residuary clause in her will. Ordinarily one of the purposes of a residuary clause is to dispose of all property not effectually disposed of in other parts of the will, thus making a complete disposition of all property in the estate. *Bushby* v. *Newhall,* 212 Mass. 432. Unless some other purpose is expressed in the will a void or lapsed legacy falls into the residuum of the estate. *Lombard* v. *Boyden,* 5 Allen, 249, 250. *Dresel* v. *King,* 198 Mass. 546, 547. *Boston Safe Deposit & Trust Co.* v. *Reed,* 229 Mass. 267. If, however, the legacy which lapses is a part of the residue it cannot again fall into the residue but must pass as intestate property. *Powers* v. *Codwise,* 172 Mass. 425. *Lyman* v. *Coolidge,* 176 Mass. 7. *Derby* v. *Derby,* 252 Mass. 176. "A construction of a will, resulting in intestacy is not to be adopted unless plainly required." *Hedge* v. *State Street Trust Co.* 251 Mass. 410, 412. *Saucier* v. *Saucier,* 256 Mass. 107, 111. *Gardiner* v. *Pelton,* 260 Mass. 577. *Lyman* v. *Sohier,* 266 Mass. 4, 8.

The appellant Mrs. Heath contends that the gift of one third of all the property to herself and another and of the rest to Genter constitutes one residuary clause and that therefore the one sixth which would have gone to Anna Florence Andersson (now Keen) had she not been a witness to the will is intestate property and is payable to Mrs. Heath, the only heir at law of the testatrix. The testatrix expressed the purpose to dispose of all her estate by charging her executors with the full disposition of her property, by giving one third of all she died possessed followed by a gift of the rest, and by stating "I do not wish any part of my property to be otherwise disposed of." The terms of the will do not require a construction resulting in partial intestacy. No particular words need be used to create a residuary clause.

In *Bates* v. *Kingsley*, 215 Mass. 62, 64, the word "remainder" was held sufficiently comprehensive in meaning "to include whatever may be left of the estate after paying the earlier bequests." "Rest" is one of the three words most commonly used to create a residuary clause and is sufficient for that purpose. *Van Winkle* v. *Catholic Missionary Union*, 192 N. C. 131, 134. *In re Bradley*, 123 Wis. 186, 188.

In *Harrington* v. *Pier*, 105 Wis. 485, the contention was made that the three fourths of the net income given to trustees and the rest, residue and remainder given to others, together constituted the residuum of the estate. The court in deciding that this contention was untenable said at pages 498–499: "The testatrix did not bequeath three fourths of her net estate in one direction and one fourth of it in another, treating the net estate as the residue. She bequeathed three fourths of the net estate in one direction, and 'all the rest, residue and remainder to . . . [parties named] to be divided between them equally, share and share alike.' The term 'residue' was used with reference to what might be left of the estate after satisfying the previously declared purposes. The amount of the residuum was not necessarily one fourth of the net estate, so called. The testatrix must be presumed to have had in mind, in view of the general language of the residuary clause, that all of her estate that for any reason might not pass under the particular bequests would go to the residuary legatees under the general language of the residuary clause. That is manifest from the whole will. If the testatrix intended to treat the net proceeds of her estate as the residue, she would have so indicated by in terms bequeathing three fourths of it to the trustees . . . and one fourth of it to the nephews mentioned, instead of using the ordinary language generally held by courts to indicate an intent that the residuary legatees are intended to take all property subject to be bequeathed by her, not otherwise effectually disposed of."

In the case at bar the gifts are not of one third and then of the remaining two thirds, but the testatrix, having made provision for the payment of debts and expenses and given one third in legacies to designated beneficiaries, gives the

"rest" to Genter. A purpose to distinguish between the gifts is indicated by the fact that the legacy of one third is outright to two, while the gift of the rest to Genter is made subject to a "yearly tax" for the father and mother of the testatrix, and Genter is also charged with the comfortable maintenance of the parents until the estate is settled. We are of opinion that a true residuary clause was intended to begin with the word "rest" and that the judge was right in holding that the one-sixth "share, of the estate of said testatrix, to which said Keen would have been entitled had she not been a witness to said will, passes as a part of the 'rest'" of the estate of the testatrix in the manner set forth in the will.

The intention of the testatrix to subject the estate given to Genter to a charge for the benefit of her father and mother is clearly manifested by the terms of the will, notwithstanding the use of the words "without restrictions" in connection with the gift. This gift is of an absolute estate but subject to a trust or charge. It will be without restrictions when the charges upon it shall have been satisfied. In *Thayer* v. *Finnegan,* 134 Mass. 62, the gift was in terms absolute but a charge upon it was held to be valid. In this case the court said at page 64: ". . . where the devisee of real estate, though not appointed executor, is positively directed to pay legacies, especially if such direction is contained in the same sentence with the devise, or appears to be given in consideration thereof, it has been held sufficient to create a charge on the real estate." *Andrews* v. *Sparhawk,* 13 Pick. 393. *Sheldon* v. *Purple,* 15 Pick. 528. *Taft* v. *Morse,* 4 Met. 523, 525. *Woods* v. *Gilson,* 178 Mass. 511. The will shows a clear intention that the father and mother shall receive an annuity out of the residue to Genter, and this purpose could not be fulfilled if the contention that Genter takes the residue without obligation to provide for the father and mother should be maintained. There is no legal objection to carrying out the expressed wishes of the testatrix for her parents. The cases holding that a legal estate in fee cannot be cut down by subsequent provisions of the will are not applicable to the facts in the case at bar, where

the terms of the will creating the gift subject it to the charge. The provision for the setting aside from the gift to Genter of a sufficient sum invested "in Government Bonds to bring in one thousand dollars yearly" creates a trust in the fund to be set aside, and the decree was right in ordering that a sufficient sum be paid to a trustee under the will to be appointed by the Probate Court to produce $1,000 annually to be paid Fitz Hodgkins as therein ordered. There is nothing in the terms of the will to indicate that the testatrix intended the benefactions for her father and mother to begin at any later time than the date of her death. *Wiggin* v. *Swett*, 6 Met. 194. See *Ayer* v. *Ayer*, 128 Mass. 575; *Smith* v. *Fellows*, 131 Mass. 20; *Pope* v. *Pope*, 209 Mass. 432, 438. G. L. c. 197, § 26. In our opinion it was the intention of the testatrix that her father should be entitled to the amount ordered to be paid him in the decree, to begin at the death of the testatrix, notwithstanding the fact that the estate referred to as "the inheritance" of Genter might not be available to establish the trust fund to produce the annuity during the period given in the will for the settlement of the estate and notwithstanding the fact that the father has been receiving support from other sources. This obligation could be met by a payment out of principal when funds from the estate became available.

The decree in so far as it orders the sum to be invested in bonds of the United States must also be affirmed. The testatrix in specifying government bonds used words more commonly applied to bonds of the United States than to bonds of a municipality, county or State. The decree must also be affirmed in ordering that the estate given to Genter be chargeable with the sum of $1,000 annually from the date of the death of the testatrix until the estate is settled and the required payment is made to a trustee, and in ordering the payment by the administrator to Fitz Hodgkins as therein ordered, and in its other provisions, including the denial as premature of the request for instructions as to investments and payments after the death of Fitz Hodgkins.

*Decree affirmed.*